UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GLYNN LETERREL WELLS #178200,                    Case No. 2:21-cv-199

                              Plaintiff,          Hon.  Jane M. Beckering
                                                  U.S. District Judge
        v.

M. RIGOTTI,

                              Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF No. 19.)

State Prisoner Glynn Leterrel Wells filed a complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)  Wells also filed a supporting affidavit.  (ECF No. 2.)

Wells's complaint identifies one Defendant:  Resident Unit Manager (RUM) Rigotti.  (ECF No. 1, PageID.3.)  The events alleged in this complaint took place at the Kinross Correctional Facility (KCF).

Wells alleges that in May 2021, he filed a grievance against three Michigan Department of Corrections (MDOC) employees at KCF complaining that they improperly refused to return legal and personal property to him while he was in protective custody.  (ECF No. 1, PageID.4.)  Wells says that on May 12, 2021, RUM

Rigotti interviewed Wells on this grievance.  (*Id.*)  Wells says that he was not allowed to say anything, and that RUM Rigotti told him that "It's my prospective you won't get this property."  (*Id.*)    Wells asked if he could get his legal work, and RUM Rigotti replied that he could not.  (*Id.*, PageID.5.)   RUM Rigotti allegedly told Wells to sign off on the grievance.  (*Id.*)  Wells replied that he would file a grievance and lawsuit on RUM Rigotti and warned RUM Rigotti to be careful in his response because he was violating Michigan Department of Corrections (MDOC) Policy.  (*Id.*)

RUM Rigotti then issued Wells a Class II misconduct ticket charging Wells with Insolence.  The ticket stated, in part, the following:

Describe Violation  (If contraband involved, describe in detail; identify any other employee witnesses):
On 5/12/2021 at 0751hrs, during an interview regarding Prisoner Wells' (178200) grievance, he said, "I'm filing a lawsuit, so you better be careful how you answer that grievance." These statements were intended to harrass and cause alarm in this employee.  Wells was identified by ONMI and OTIS.

(ECF No. 1-1, PageID.15.)

Wells learned about Rigotti's ticket the next day, just before he was transferred to a different prison.  (ECF No. 1, PageID.5-6.)  Wells says that he did not receive a hearing on Rigotti's misconduct ticket.  (*Id.*, PageID.7.)  Wells asserts that the ticket was issued in retaliation for Wells's grievance against Rigotti's supervisors.  (*Id.*)

RUM Rigotti's motion for summary judgment argues that Wells never exhausted his administrative remedies prior to filing this lawsuit.  RUM Rigotti argues that because no misconduct hearing was held, Wells needed to exhaust his claims by following the MDOC grievance process.  It is undisputed that Wells did not file a grievance naming RUM Rigotti regarding this retaliation claim.  In response, Wells argues that he could only exhaust his administrative remedies during the

misconduct hearing and since no misconduct hearing was held, no procedure existed for him to further exhaust his claims.

It is unclear exactly what happened after RUM Rigotti issued the misconduct ticket, but it is undisputed that a misconduct hearing was never held.   RUM Rigotti says that the misconduct ticket was dismissed without a hearing, but there exists no support for his contention in the Court record.  Wells indicates that he never received notice that the misconduct ticket was dismissed.   Based upon the record before the Court, Wells did not receive notice that Rigotti's misconduct ticket was dismissed, if that is what happened to it.  As a result, he would have no reason to think that his only means of exhausting his claim against Rigotti was to file a grievance.   The undersigned respectfully recommends that the Court deny Defendant's motion for summary judgment because there exists an issue of fact as to whether Wells exhausted his available administrative remedies.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one

---

1       If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly,

---

Instead, the court may conduct a bench trial to resolve the issue.  (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence.  *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*.  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*.  When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration.  *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in MDOC Policy Directive 03.02.130 (effective on March 18, 2019).  According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.   The Policy Directive also provides the following directions

for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id.* at ¶ DD.  The respondent at Step II is designated by the policy.  *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130.  *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for

7

filing grievances at Step I.  *Id.*  Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.  The prisoner will be promptly notified if an extension of time is needed to investigate the grievance.  *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct,

whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also

---

[2]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## IV. Analysis

Generally, to exhaust administrative remedies on a claim that an inmate received a retaliatory misconduct ticket, the inmate first raises that issue during the misconduct hearing.  *Siggers*, 652 F.3d at 693-94.  However, Wells did not have that opportunity because he never received a misconduct hearing.   Defendant argues that because the misconduct ticket was dismissed, Wells was required to exhaust his administrative remedies by pursuing a grievance. (ECF No. 20, PageID.86.)

Wells points out correctly that the record contains no evidence that the misconduct ticket was dismissed. (ECF No. 22, PageID.127.) This is a critical factor in determining the course Wells was required to take to exhaust his administrative remedies.  Clearly, because there was no misconduct hearing, Wells did not have the opportunity to raise the issue of retaliation during the hearing.   That leaves two

---

[3]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."   *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

alternative theories:  either Wells had no available remedy to exhaust his claim, or Wells should have filed a grievance asserting his retaliatory misconduct claim.

The Sixth Circuit has stated that "the filing of retaliatory misconduct reports is grievable under MDOC Policy Directive 03.02.130." *Reynolds-Bey v. Harris*, 498 F. App'x 493, 496 (6th Cir. 2011).   For example, where an inmate does not challenge the conduct charged in the ticket but argues that the officer wrote the ticket to retaliate when the officer would not have written the ticket otherwise, filing a grievance on the issue may be the only way an inmate could properly exhaust the claim. *Odom v. Hill*, 1:21-cv-403, 2022 WL 4115425, at *3 (W.D. Mich. Sept. 9, 2022).

RUM Rigotti argues the Court should follow *Ali v. Simmons*, No. 1:19-cv-126, *Report and Recommendation*, 2020 WL 6597562, at *5 (W.D. Mich. May 5, 2020) *Report and Recommendation adopted in part*, 2020 WL 5626921 (W.D. Mich. Sept. 21, 2020) (finding that plaintiff failed to raise retaliation during the misconduct hearing but noting that "if Plaintiff was not afforded a hearing, he could have filed a grievance").[4]  Rigotti argues that the Court should conclude that Wells failed to exhaust his administrative remedies with respect to his retaliatory misconduct claim by not pursuing a grievance through each step of the grievance process.

Plaintiff argues that the Court should follow *Sampson v. Davis*, No. 2:19-cv-176, *Report and Recommendation*, 2021 WL 2419618 (W.D. Mich. May 12, 2021),

---

[4]    In *Parker v. Turner*, 2022 WL 722192, at *4 (E.D. Mich., March 9, 2022), the Court cited *Ali* as authority for concluding that when a plaintiff is not afforded a misconduct hearing, his "remedy was to file a grievance so that there could be administrative review of his [retaliation] allegations."

*Report and Recommendation adopted*, 2021 WL 2416894 (W.D. Mich. June 14, 2021),

which found that a genuine issue of material fact existed regarding the exhaustion of

administrative remedies and rejecting the argument that plaintiff was required to

exhaust his retaliatory misconduct claim by filing a grievance.  In *Sampson*, the

undersigned wrote:

> CO Davis contends that in the absence of a hearing on the misconduct
> ticket, Sampson should have pursued his complaint through the
> grievance process. (*Id.* (citing *Ali v. Simmons*, Case No. 1:19-cv-126,
> 2020 WL 6597562, at *5 (W.D. Mich. May 5, 2020) ("If Plaintiff was not
> afforded a [misconduct] hearing, he could have filed a grievance"), *report
> and recommendation adopted in part*, Case No. 1:19-cv-126, 2020 WL
> 5626921 (W.D. Mich. Sept. 21, 2020).

> CO Davis's reliance on the quote from *Ali* is misplaced because it is dicta
> and because it conflicts with the Sixth Circuit's rule on exhausting
> claims based on misconduct tickets.

> The Sixth Circuit holds that "Michigan's rules provide that the only
> avenue for challenging such [misconduct] reports is a hearing." *Siggers
> v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011).  Neither the Sixth Circuit
> nor this Court has established a requirement that a prisoner must
> exhaust his or her claim via a grievance when the prisoner is denied an
> opportunity to have hearing on a misconduct report.

> In addition, CO Davis has failed to provide any evidence that would
> show that Sampson received a misconduct hearing and failed to raise
> the issue of retaliation. In fact, Davis's motion raises more questions
> than it answers.  If Sampson were charged with a Class I misconduct,
> he would be entitled to a hearing. *See* MDOC Policy Directive (PD)
> 03.03.105, ¶ AA (effective April 9, 2012).

*Id.* at *3.  The Court explained that if the Sampson was exonerated by the hearing

officer before a hearing, he probably did exhaust his claim.  *Id.* at *4.

It is Defendant's obligation to fully explain the facts in the record when moving

for summary judgment on the issue of exhaustion of administrative remedies.  In

*Sampson*, the defendant failed to fully support his claim on the record and the Court determined that genuine issues of material fact existed on the issue of exhaustion. The Court found that "[t]he record is, however, insufficiently developed for the undersigned to conclude that a hearing officer reviewed the misconduct report and ruled in Sampson's favor." *Id*.

There is no dispute that a misconduct hearing was never held on the misconduct ticket that RUM Rigotti issued to Wells. What is not clear is why there was no misconduct hearing, and what happened to the ticket. RUM Rigotti asserts, without any support, that the ticket was dismissed. Wells says he was never informed that the ticket was dismissed. Thus, Wells would have been left to guess which administrative route to pursue in order to exhaust his claim. In any case, the record is not sufficiently developed to rule in Defendant's favor at this point. In the opinion of the undersigned, like in *Sampson*, genuine issues of material fact exist regarding whether Wells had an avenue to exhaust his administrative remedies on his retaliation claim.

The undersigned wishes to note that Defendant may move for a bench trial or evidentiary hearing solely on the issue of exhaustion of administrative remedies to resolve any disputed factual issues that remain.

### V.  Recommendation

The undersigned respectfully recommends that this Court deny RUM Rigotti's motion for summary judgment.

13

Dated:   November 4, 2022              /s/ *Maarten Vermaat*
                                       MAARTEN VERMAAT
                                       U. S. MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).