UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GLYNN LETERREL WELLS #178200,

    Plaintiff,

v.

M. RIGOTTI,

    Defendant.

_____/

Case No.  2:21-cv-199

Hon.  Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses the summary judgment motion filed by Defendant.

Plaintiff in this case – state prisoner Glynn Wells – filed this civil rights action pursuant to 42 U.S.C. § 1983.  Wells's complaint identifies one defendant:  Resident Unit Manager (RUM) Rigotti.  (ECF No. 1, PageID.3.)  The events alleged in this complaint took place at the Kinross Correctional Facility (KCF).  Wells says that RUM Rigotti issued a false insolence misconduct ticket based upon Wells's statement that he intended to file a grievance and lawsuit against RUM Rigotti.

In the opinion of the undersigned, no genuine issue of material fact exists which could support the claim that RUM Rigotti retaliated against Wells based upon Wells's statement that he intended to file a grievance and lawsuit against RUM Rigotti.  Wells told RUM Rigotti to be careful how he responded to Wells's grievance

because Wells intended to file a grievance and lawsuit against RUM Rigotti. Wells's threat to file a *frivolous* grievance and lawsuit was not protected conduct. The insolence misconduct ticket issued by RUM Rigotti was based upon Wells's attempt to intimidate RUM Rigotti and was not based upon any protected conduct by Wells. It is respectfully recommended that the Court grant Defendant's motion for summary judgment. (ECF No. 37.)

## II. Factual Allegations

Wells alleges that in May 2021, he filed a grievance against three Michigan Department of Corrections (MDOC) employees at KCF, complaining that they improperly refused to return legal and personal property to him while he was in protective custody. (ECF No. 1, PageID.4.) Wells says that on May 12, 2021, RUM Rigotti interviewed him on this grievance. (*Id.*) Wells says that he was not allowed to say anything, and that RUM Rigotti told him that "It's my prospective you won't get this property." (*Id.*) Wells asked if he could get his legal property, and RUM Rigotti replied that he could not. (*Id.*, PageID.5.) RUM Rigotti allegedly told Wells to sign off on the grievance. (*Id.*) Wells replied that he would file a grievance and lawsuit on RUM Rigotti and warned RUM Rigotti to be careful in his response because he was violating Michigan Department of Corrections (MDOC) Policy. (*Id.*)

RUM Rigotti then issued Wells a Class II misconduct ticket charging Wells with Insolence. The ticket stated, in part, the following:

> Describe Violation (If contraband involved, describe in detail; identify any other employee witnesses):
> On 5/12/2021 at 0751hrs, during an interview regarding Prisoner Wells' (178200) grievance, he said, "I'm filing a lawsuit, so you better be careful how you answer that grievance." These statements were intended to harrass and cause alarm in this employee. Wells was identified by ONMI and OTIS.

(ECF No. 1-1, PageID.15.)

Wells learned about RUM Rigotti's ticket the next day, just before he was transferred to a different prison. (ECF No. 1, PageID.5-6.) Wells says that he did not receive a hearing on RUM Rigotti's misconduct ticket. (*Id.*, PageID.7.) Wells asserts that the ticket was issued in retaliation for Wells's grievance against RUM Rigotti's supervisors. (*Id.*) It is unclear exactly what happened after RUM Rigotti issued the misconduct ticket, but it is undisputed that a misconduct hearing was never held.

Wells's Step I grievance was denied because his property was packed pending his transfer to another facility. The Step I Grievance Response Supplemental Form provides in part:

> **INVESTIGATION SUMMARY:**
> Prisoner Wells was interviewed on 5/12/2021, regarding the Step I grievance he filed. Prisoner Wells stated since SCC deemed it was not safe for him to return to general population, he should be permitted to receive his property.
> Deputy Warden Howard informed me Wells was originally placed in Temporary Holding on 4/26/2021 and granted protection thru SCC. Prisoner Wells was reviewed again on 5/7/2021 by SCC, after further information was provided and it was determined that prisoner Wells could be placed in general population at KCF. Prisoner Wells claimed he still feared for his safety and refused return to an alternate housing unit at KCF. He is not in protective housing as outlined in PD 05.01.140. Prisoner Wells was submitted to classification and approved for transfer to another location on 5/10/2021 pending negative COVID result. He is currently in isolation pending transfer to another facility on 5/13/2021 in accordance with MDOC COVID 19 protocols.
>
> **APPLICABLE POLICY, PROCEDURE, ETC.:**
> PD 04.07.112 Prisoner Personal Property paragraph (V) states: Wherever possible, prisoners should be permitted to pack their own property. They also should be allowed to accompany or carry their own property when moved to a different general population cell or room within a facility whenever possible. When it is necessary to move a prisoner without the prisoner being able to pack their own property, staff shall immediately secure the prisoner's property to safeguard it against theft. If the prisoner will be returning to their cell or room within two calendar days, the property may be left secured in the room or cell. Otherwise, staff shall pack, seal, receipt, and store the property in the property room or other secure area of the facility, as designated by the Warden. The receipt shall be given or forwarded to the prisoner within one calendar day after packing.
>
> **DECISION SUMMARY:**
> Since Prisoner Wells is currently being isolated prior a pending a transfer to an alternate facility in accordance with MDOC COVID-19 protocol, he is not required to possess his personal property other than access to KOP medication, medical equipment, and legal property, as necessary per DOM 2021-26R6.
> Furthermore, because prisoner Wells will not be returning to his room within two calendar days due to his pending transfer, his property was packed, sealed, receipt, and stored in the KCF property room in accordance with PD 04.07.112 Prisoner Personal Property.
> Upon completion of my investigation, it was determined no violations of policy directives exist.

(ECF No. 37-2, PageID.196.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Retaliation

Wells argues that RUM Rigotti issued the insolence misconduct ticket in retaliation for Wells's threat to file a lawsuit and grievance against RUM Rigotti. Wells threatened to file the lawsuit and grievance based on the interview regarding the May 9, 2021 grievance concerning Wells's property.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)

4

(en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

a. **Protected Conduct**

Defendant Rigotti argues that Wells failed to engage in protected conduct because the threat to file a grievance and lawsuit based upon how Rigotti responded to Well's prior grievance was frivolous and an act of insolence in violation of prison rules. The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). "If the grievances are frivolous, however, this right is not protected." *Id.* Prisoners "cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives." *Smith v. Campbell*, 250 F.3d 1032, 1037. "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response

5

to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

Beyond the general acknowledgment that grievances used to abuse or manipulate the grievance system are frivolous, limited authority exists as to what renders a grievance frivolous. As acknowledged by the Sixth Circuit in *Maben v. Thelen*, "cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*." 887 F.3d 252, 264–65 (6th Cir. 2018) (collecting cases).[1] This Court has also found grievances involving "verifiably untrue" allegations to be frivolous. *Chrzan v. Mackay*, No. 1:19-cv-116, 2020 WL 7774741, at *3 (W.D. Mich. Nov. 30, 2020) (finding that the plaintiff's grievance was frivolous where a video recording of the underlying event contradicted the allegations in the grievance), *report and recommendation adopted*, No. 1:19-cv-116, 2020 WL 7773419 (W.D. Mich. Dec. 30, 2020). Similarly, the Sixth Circuit held that a prisoner's grievance complaining about conduct that had no impact on the prisoner was frivolous. *Thaddeus-X v. Love*, No. 98-2211, 2000 WL 712354, at *2–3 (6th Cir. May 22, 2000) (finding that a grievance complaining about a prison employee eating at his desk was "patently frivolous as the defendant's conduct had no adverse impact on [the plaintiff]").

---

[1] For example, in *White–Bey v. Griggs*, the Sixth Circuit found that a prisoner's grievance that he was provided a typewriter rather than a computer was frivolous. 43 Fed. App'x 792, 794 (6th Cir. 2002).

Wells submitted a grievance dated May 9, 2021, stating that he was not allowed to have his property after he spoke with ADW Menard and Deputy Warden Howard on May 5, 2021. (ECF No. 37-2, PageID.195.) RUM Rigotti was assigned as the Step I respondent and he interviewed Wells on May 12, 2021. (ECF No. 37-2, PageID.196, ECF No. 27-3, PageID.198-199.) A portion of RUM Rigotti's affidavit is shown below. Rigotti says that Wells threatened him during the interview.

> 5. I interviewed Wells on the grievance on May 12, 2021. During the interview, Wells told me that I "better be careful" how I answer the grievance, and further made threats in a manner perceived by me as intended to alarm me and to intimidate me to do what he wanted.
>
> 6. Based on Wells' behavior, I issued a Class II misconduct report on Wells for Insolence, in accordance with MDOC PD 03.03.105 – Prisoner Discipline.
>
> 7. The misconduct was not issued because Wells stated he was going to file grievances and/or lawsuits. I am well aware that prisoners have a right to file lawsuits and grievances related to their prison conditions. The misconduct was issued based on the insolent manner in which Well communicated those statements to me at his grievance interview.

(ECF No. 37-3, PageID.199.)

The facts are not in dispute. As shown in Wells's affidavit, he agrees that he warned RUM Rigotti he intended to file a grievance and lawsuit against him.

> 6) That, Plaintiff on 5/12/21 during the grievance interview was engaged in a protected conduct when I warned Rigotti, that I was going to file a grievance and lawsuit on him. Maben, 887 F.3d.

(ECF No. 39, PageID.239 (affidavit of Wells).)  But this "warning" was *before* RUM Rigotti took any action relating to reviewing the grievance with Wells and appeared to relate to Rigotti's involvement in reviewing Wells's grievance.  This warning fails to qualify as protected activity for three reasons.

First, a prison official's involvement in the denial of administrative grievances is not actionable conduct.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  The Sixth Circuit held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983.  *Id.*  The reason is that there must be active unconstitutional behavior.  Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance.  *Id.*  Also, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure."  *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (no constitutional right to a grievance procedure).  At the time of Wells's so called warning, RUM Rigotti was assigned to respond to Wells grievance. Wells had no basis to file a grievance or lawsuit against RUM Rigotti at the time.

8

Second, and perhaps more importantly, Wells's "warning" to RUM Rigotti at the time RUM Rigotti interviewed him on the grievance cannot be considered protected conduct necessary to support a retaliation claim.  A prisoner does not engage in protected conduct simply by uttering the words "grievance" or "lawsuit."  These are not essentially magic words that constitute protected conduct simply by their utterance.   Instead, the threat to file a grievance or a lawsuit must be based on something that has already taken place.   Here, Wells had no basis to state a "warning" to RUM Rigotti that he intended to file a grievance or lawsuit against him.  Wells's threat to file a grievance or lawsuit was frivolous and did not constitute protected conduct.

Third, Wells's warning to Rigotti was insolence and an improper attempt to influence Rigotti's review of Wells's grievance.  As noted, Wells told RUM Rigotti that he "better be careful" how he answered the grievance.  This alleged statement arguably violated MDOC Policy Directive 03.03.105, which (1) defines insolence as "[w]ords, actions, or other behavior which is intended to harass, degrade, or cause alarm in an employee", and (2) notes that "Interference with the Administration of Rules" includes "[a]cts intending to impede, disrupt, or mislead the disciplinary process for staff or prisoners . . ."   (ECF No.37-5, PageID.224.)   "Thus, while a prisoner may have a right to file grievances against prison officials, he or she cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives."  *Smith*, 250 F.3d at 1037.  RUM Rigotti perceived Wells's statement to him as a threat or attempt to intimidate or cause RUM Rigotti alarm.

9

Thus, Rigotti issued a misconduct ticket. In addition, in the opinion of the undersigned, Wells's warning to RUM Rigotti was an attempt to influence the outcome of the grievance process. *Annabel v. Novak*, 2021 WL 4445000, *3 (W.D. Mich., Sept. 7, 2021) *report and recommendation adopted*, 2022 WL 4077837 (W.D. Mich., Sept. 6, 2022) ("Plaintiff enjoys no First Amendment right to threaten or intimate prison staff.")

### b. Causal Connection

RUM Rigotti additionally argues that even if Wells could show that he had engaged in protected conduct when he issued his "warning" about filing a grievance or lawsuit, RUM Rigotti would have issued the misconduct ticket for insolence based upon Wells's statement to RUM Rigotti that he "better be careful" how he answered the grievance.

At the summary judgment stage, the Sixth Circuit employs a burden-shifting approach with regards to this causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Blatter*, 175 F.3d at 399; *see also Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007).

Here, the act that Wells identifies as his protected conduct was also the basis for the alleged adverse action taken by Rigotti, i.e. the issuance of an insolence ticket. Rigotti explains in his affidavit (ECF No. 37-3) why he issued the ticket. In the opinion of the undersigned, Rigotti's statements in his affidavit demonstrate that he

10

would have issued the insolence misconduct ticket under those circumstances regardless of any other protected conduct by Wells.

## V. Immunity

In addition to arguing that he did not violate Wells rights under the First Amendment, Defendant asserts that he is entitled to qualified immunity in his individual capacities and sovereign immunity in his official capacities.

### a. Qualified Immunity

Defendant seems to argue that no clearly established law exists to support a First Amendment retaliation claim against a prison official who issues an insolent misconduct ticket due to a threat to file a lawsuit or grievance. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). But, as addressed above, prison officials may not retaliate against prisoners who engage in protected conduct. That point is clearly established.

Here, however, the specific facts of the case, viewed in the light most favorable to Wells, demonstrate that Rigotti is entitled to qualified immunity. In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is

11

inappropriate. *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)). Here, the record before the Court, viewed in the light most favorable to Wells, does not create a genuine issue of material fact regarding the question of whether Rigotti violated a clearly established constitutional right. As explained above, the record before the Court fails to show a genuine issue of material fact regarding the question of whether Wells's First Amendment rights were violated when Rigotti wrote a misconduct ticket in response to Wells's warning. Accordingly, Rigotti is alternatively entitled to qualified immunity.

### b. Sovereign Immunity

Rigotti also argues that he is entitled to sovereign immunity as to Wells's claims against him in his official capacity for monetary damages. A lawsuit against a state official in his or her official capacity for monetary damages is treated as a lawsuit against the State. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Section 1983 did not expressly abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). As such, any claim that

Wells could assert against Defendant in his official capacity for monetary damages is properly dismissed in accordance with Eleventh Amendment.[2]

## VI. Recommendation

It is respectfully recommended that the Court grant Defendant's motion for summary judgment. (ECF No. 37.) In the opinion of the undersigned, no genuine issue of material fact exists regarding Wells's claim that RUM Rigotti retaliated against him. Wells did not engage in protected conduct by "warning" RUM Rigotti to be careful how he responded to Wells's grievance because Wells intended to file a grievance and lawsuit against RUM Rigotti based upon his grievance response. The insolence misconduct ticket issued by RUM Rigotti was based upon Wells's attempt to intimidate RUM Rigotti and was not based upon any protected conduct that Wells may have engaged in. Alternatively, the undersigned recommends that the Court rule that Rigotti is entitled to qualified immunity.

If the Court accepts this recommendation, this case will be dismissed.

Dated:   August 16, 2023               /s/ *Maarten Vermaat*
                                       MAARTEN VERMAAT
                                       U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections

---

[2]   Wells indicates that he is not seeking damages against RUM Rigotti in his official capacity. (ECF No. 39, PageID.242 (affidavit of Wells).)

13

constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).